Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ALICYN CATHEY and JULIANNE STUEBEN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LEDISA LLC,

Defendant.

Case No: 1:26-cv-06456-KES-EPG

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Alicyn Cathey and Julianne Stueben ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant Ledisa LLC ("Ledisa" or "Defendant") and state:

## I. NATURE OF THE ACTION

1. Ledisa develops, distributes, markets, and sells an assortment of transdermal wellness patches, which contain natural ingredients and are advertised as a simple and holistic alternative to prescription medications. Plaintiff's instant putative class action complaint concerns Ledisa's marketing and sale of just one type of its patches, the "GLP-1 Patches," which are now called "Berberine Patches," although often still referred to as "GLP-1 Patches" online (collectively referred to as "GLP-1 Patches"). Ledisa's fraudulent conduct is two-fold: Ledisa falsely and deceptively misrepresents to consumers that its GLP-1 Patches (1) contain "GLP-1" and (2) provide the well-known benefits of weight loss, decreased appetite, lower blood sugar levels, and reduced cravings, when in fact, they do not contain any GLP-1 and do not work as advertised.

2. GLP-1, or "glucagon-like peptide-1" is a natural gut hormone created in the body that is responsible for regulating blood sugar, slowing digestion processes, and reducing appetite. However, when this hormone becomes dysregulated, blood sugar levels become unmanageable and appetite centers become uncontrollable, leading to the onset of major metabolic diseases, like obesity and Type 2 diabetes—two of the most serious chronic diseases permeating the U.S. population.

3. As a result, FDA-approved prescription medications are routinely prescribed to treat these all-too-common conditions. GLP-1 receptor agonists, or synthetic forms of the GLP-1 hormone, mimic the same bodily processes as the innate GLP-1 hormone, albeit in a more effective manner with higher potency, making GLP-1 agonists an extremely effective weight loss tool.

4. The weight loss industry is a billion-dollar business boosted by skyrocketing sales of injectable GLP-1 weight loss medications, like Ozempic (semaglutide) and Mounjaro (tirzepatide), which have become popular household names. Supplement manufacturers like Ledisa have capitalized on this hype and the public's "GLP-1" name recognition at the expense of unknowing

consumers who are unsavvy to the nuances of how this natural hormone and its agonists do (and do not) work.

5. In lieu of these FDA-approved medications, Ledisa touts its GLP-1 Patches as a natural supplement designed to "support" GLP-1 production, appetite control, weight management, and gut health. On the front label of the product packaging, Ledisa describes its "**GLP-1 Patches**" as containing a "Science Backed Formula." On its website, in publicly available marketing materials, and on social media, Ledisa promises consumers that the GLP-1 Patches provide "science-backed GLP-1 support"; "sustained appetite control"; a "natural approach to weight management…without the need for needles or the digestive upset common with oral tablets"; "optimize[d] metabolic health by supporting balanced blood sugar levels and reducing sugar cravings"; and "trigger[] GLP-1 release in body"; "keep[] GLP-1 levels steady all day"; and are "designed by experts, [and] recommended by doctors[,]" to name just a few representations.

6. However, Ledisa's advertising and marketing campaign is false, deceptive, and misleading because the GLP-1 Patches do not contain any of the actual active GLP-1 hormone or a GLP-1 receptor agonist whatsoever, and thus, do not provide consumers with any of the advertised weight management benefits. In other words, Ledisa advertises and sells its GLP-1 Patches as containing "GLP-1," when in fact, it is simply false. Instead, Ledisa's GLP-1 Patches contain a variety of herbal extracts such as berberine and apple cider vinegar, which are plainly ineffective at providing the same benefits as the GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery, which is an ineffective, if not an impossible, delivery system for these ingredients.

7. Ledisa's strategy to create a line of GLP-1 Patches for sale in the supplement market is not accidental. Since 2025, Ledisa, capitalizing on the public's heightened intrigue for these medications and possible natural alternatives, has developed, distributed, marketed, and sold the GLP-1 Patches in the online marketplace, targeting health-conscious consumers who desire attaining the positive weight management benefits associated with the infamous weight loss drugs.

8. Growing consumer fascination and desire for holistic alternatives to synthetic drugs has spurred in light of several factors like limited access to healthcare, increased costs for filling

prescription medications, and greater transparency of ongoing developments in scientific literature and clinical trials illustrating the dangerous side effects of long-term prescription drug use. Consumers purchase Ledisa's GLP-1 Patches in hopes that they will receive the positive attributes commonly associated with GLP-1 without any of the aforementioned obstacles, costs, or drawbacks. In reality, however, because the GLP-1 Patches do not contain GLP-1 as advertised, consumers do not receive any of the promised health benefits.

9. Plaintiffs and those similarly situated Class Members relied to their detriment on Ledisa's misrepresentations that the GLP-1 Patches did in fact contain GLP-1 and would provide the advertised weight management and appetite control benefits associated with GLP-1 medications when deciding to purchase the patches. Plaintiffs and Class Members would not have purchased the GLP-1 Patches absent Defendant's misrepresentations regarding the composition and efficacy of the GLP-1 Patches. As a result, Plaintiffs and Class Members suffered monetary damages as a result of Defendant's false and misleading advertising.

## II. PARTIES

10. Plaintiff Alicyn Cathey is a citizen and resident of Merced, California.

11. Plaintiff Julianne Stueben is a citizen and resident of Mount Vernon, New York.

12. Defendant Ledisa LLC is a Delaware limited liability company with its principal place of business located in Wilmington, Delaware.

## III. JURISDICTION AND VENUE

13. This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed classes is a citizen of a different state than Ledisa.

14. This Court has personal jurisdiction over Ledisa because it purposefully directed its activities in this District, committed the wrongful acts alleged herein in California, regularly conducts business in this District, and has extensive contacts with this forum.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, and Ledisa regularly conducts business in this District.

## IV. FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Background of GLP-1 and its Role in Metabolic Diseases

16. GLP-1, or "glucagon-like peptide-1" is a hormone naturally produced in the small intestine that is primarily responsible for the body's regulation of blood sugar levels, but also aids in various weight management mechanisms, such as slowing digestion, curbing cravings, and controlling appetite.[1]

17. Specifically, when the body releases natural GLP-1 after eating, it communicates with several organs, including the brain to decrease feelings of hunger; the stomach to increase feelings of fullness by slowing gastric emptying; and the pancreas to release insulin and suppress glucagon secretion, which overall decreases blood sugar levels by moving glucose from the blood and into the cells for energy use.[2]

18. Since GLP-1 acts "as a food thermostat in your gut," when this hormone becomes dysregulated, blood sugar levels become unmanageable and appetite centers become uncontrollable, leading to the onset of major metabolic diseases, like obesity and Type 2 diabetes.[3]

19. Enter GLP-1 agonists, which are a class of pharmaceutical medications that mimic the body's natural GLP-1 hormone that "bind" to the body's GLP cell receptors to trigger the same

---

[1] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

[2] GLP-1: The Naturally Produced Hormone, General Pharmacy Compounding, Wellness Works, September 4, 2024, available at https://www.pccarx.com/Blog/glp-1-the-naturally-produced-hormone.

[3] Sarah Williams, GLP-1s 101: What the science says about weight loss, side effects, safety, Stanford Medicine News Center, June 29, 2026, available at https://med.stanford.edu/news/insights/2026/06/glp1s-101-weight-loss-wegovy-ozempic-zepbound-side-effects-safe-use.html.

effects and play the same role as the body's GLP-1 hormone.[4] Stated another way, prescription GLP-1 medications are heroized as "game changers in both obesity and diabetes management" given their unparalleled efficacy in slowing digestion, curbing appetite, and losing weight.[5]

20. For this reason, pharmaceutical companies sell FDA-approved prescription medications to treat these metabolic conditions, such as Ozempic (semaglutide) and Mounjaro (tirzepatide), which are injectable medications delivered subcutaneously (in fatty tissue under the skin) via needle and syringe,[6] and Wegovy (semaglutide), which is now also available in tablet form to be taken orally.[7]

21. A survey conducted by the Gallup National Health and Well-Being Index reports that U.S. adult usage of GLP-1 medications for weight loss has quadrupled since 2024—from 3% in 2024 to 11% in 2026.[8]

22. However, Americans today face many obstacles in attaining access to affordable health care and prescription medications. Polling reports illustrate that approximately 59% of U.S. adults are worried about being able to afford prescription medications, while approximately 43% of adults have failed to take their medication as prescribed due to costs, and have resorted to other cost-saving measures such as skipping doses and purchasing over-the-counter-drugs instead.[9]

23. Excessive costs are even more of a concern for GLP-1 medications, which can run consumers anywhere from $900 to $1,400 per month without insurance.[10]

---

[4] GLP-1 Agonists, Cleveland Clinic, last updated on July 3, 2023, available at https://my.clevelandclinic.org/health/treatments/13901-glp-1-agonists.

[5] Jessica Migala, Can You Boost GLP-1 Naturally?, WebMD, medically reviewed by Neha Pathak, MD on July 26, 2024, available at https://www.webmd.com/obesity/features/natural-glp1-boosters.

[6] GLP-1 Agonists, Cleveland Clinic, last updated on July 3, 2023, available at https://my.clevelandclinic.org/health/treatments/13901-glp-1-agonists.

[7] How do I take Wegovy pill?, Wegovy, available at https://www.wegovy.com/obesity/starting-wegovy/starting-wegovy-pill.html.

[8] Dan Witters, In U.S., GLP-1 Usage Reaches New High, Gallup, July 7, 2026, available at https://news.gallup.com/poll/712157/glp-usage-reaches-new-high.aspx.

[9] Audrey Kearney, *et al.*, Public Opinion on Prescription Drugs and Their Prices, KFF, published March 31, 2026, available at https://www.kff.org/health-costs/public-opinion-on-prescription-drugs-and-their-prices/.

[10] Carley Prendergast, GLP-1 Costs: Semaglutide, Tirzepatide and Compounded GLP-1s Prices, Forbes, June 1, 2026, available at https://www.forbes.com/health/weight-loss/glp-1-costs/.

24. It is no surprise, then, in a world where metabolic diseases like type 2 diabetes and obesity are prevalent amongst adults and children alike,[11] the appeal for affordable and accessible GLP-1 boosting products in the consumer marketplace soars.

25. As Dr. Melanie Jay, director of the NYU Langone Comprehensive Program on Obesity Research, has noted, consumers become "desperate" for effective weight loss medications and as demand for these drugs exponentially rises, "it creates openings for people to exploit that demand."[12] Ledisa is just one of those companies exploiting the craze of effective weight loss medications at the expense of unknowing consumers.

**B. Ledisa's Advertising and Marketing of the GLP-1 Patches**

26. Ledisa touts itself as "a natural wellness patch brand dedicated to reshaping how you support your body every day."[13] Ledisa's stated mission is "to build products that feel gentle, thoughtful and truly useful" and to create 'solutions made to help people feel more aligned with their bodies."[14]

27. Defendant sells a variety of transdermal wellness patches advertised as "effective patch-based solutions designed to support your entire day" and "a smarter, more effortless way to support wellness." Alongside Ledisa's GLP-1 Patches, Defendant's other patches in its wellness patch collection include the Dopamine Patches, Energy Patches, Relax Patches, and Sleep Patches.

28. Ledisa's transdermal patches are adhesive stickers that supposedly work by delivering ingredients through the wearer's skin—"an incredibly effective delivery system"[15]—that "bypass[es] digestion and provid[es] steady, effective absorption all day long."[16] Defendant boasts

---

[11] Type 2 Diabetes, U.S. Centers for Disease Control and Prevention, May 15, 2024, available at https://www.cdc.gov/diabetes/about/about-type-2-diabetes.html; Adult Obesity Facts, U.S. Centers for Disease Control and Prevention, May 14, 2024, available at https://www.cdc.gov/obesity/adult-obesity-facts/?utm_source=openai.

[12] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

[13] Ledisa, https://ledisa.com/.

[14] Ledisa, Who We Are, https://ledisa.com/pages/about-us.

[15] Ledisa, https://ledisa.com/.

[16] Ledisa GLP-1 Daily Support Patches, https://ledisa.com/products/glp-1 (last accessed July 31, 2026). Sometime after Plaintiff filed the initial Complaint, Ledisa apparently removed all of its

its transdermal patches as "supplements, made simple" with "no pills, no powders"—"just peel, stick, and go."[17]

29. In 2025, Ledisa began selling its GLP-1 Patches on its official website, Ledisa.com, and in other online platforms such as Amazon.

30. On the front and center of Ledisa's GLP-1 Patches' product packaging, in the largest text most noticeable to consumers is the label "**GLP-1 Patches**" in bolded black lettering contrasting against the bright teal background.




31. Underneath the prominent "GLP-1" label in smaller white font against a darker teal banner is the product description: "Science Backed Formula."

32. In the online product listing on Ledisa's website, Ledisa states the GLP-1 Patches will "Control Your Cravings" and "Transform Your Body."[18]

33. As a consumer scrolls through the image carousel within the product listing, Ledisa purports to display comparison images of users before and after using Ledisa's GLP-1 Patches:[19]

---

webpages concerning its "GLP-1 Patches" from the internet and those webpages are not archived on the Wayback Machine.

[17] Ledisa, https://ledisa.com/.

[18] Ledisa GLP-1 Daily Support Patches, https://ledisa.com/products/glp-1 (last accessed July 31, 2026).

[19] *Id.*







34. Ledisa's website is replete with numerous false and misleading advertising claims that Ledisa's GLP-1 Patches will "support" GLP-1 levels and promote "appetite control, weight management, and gut health."[20]

35. For example, Defendant's website prominently claims its GLP-1 Patches allow consumers to "take control of cravings with science-backed GLP-1 support" and provides substantial weight management benefits including "no constant hunger anymore—smaller portions finally satisfy you"; "the scale finally moves—no more plateaus, real results"; "snack thoughts disappear—no more constant food thoughts"; and "no more cravings attacks—willpower easy, control at 100%."[21]

36. Defendant's website also falsely claims that Ledisa's GLP-1 Patches "are the best way" to "sustain[] appetite control with Ledisa's natural approach to weight management…without the need for needles or the digestive upset common with oral tablets."[22]

37. Additionally, Defendant's website misleadingly promises that the ingredients in its GLP-1 Patches "trigger GLP-1 release in body", "keep[] GLP-1 levels steady all day", and "optimize metabolic health by supporting balanced blood sugar levels and reducing sugar cravings."[23]

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

38. To gain credibility and further deceptively link the faux efficacy of its GLP-1 Patches to that of approved pharmaceutical medications, Defendant even goes so far to boldly state on its website that Ledisa's GLP-1 Patch is "#1 Doctor Approved" and quotes a purported review endorsing the efficacy of the GLP-1 Patches:




39. In several posts made on its Instagram page, Ledisa doubles down on its misleading website representations that the Ledisa GLP-1 Patches contain actual GLP-1 and perform just as effectively as approved GLP-1 pharmaceutical medications, for example:

- "The Ledisa patch delivers steady GLP-1 and appetite support through the skin, quietly, all day, with no pills and nothing to remember…" (June 15, 2026);

- "What if eating felt easy again? Less snacking on autopilot, more feeling genuinely satisfied after a normal meal. The GLP-1 appetite-support patch works quietly through the skin to help you feel more in balance around food, the simple daily way. No spiral, no six capsules." (June 17, 2026);

- "Ever wonder how the GLP1 Patch actually works? It's designed to support your body's natural GLP-1 pathway, the hormone often linked to appetite regulation and fullness cues. When GLP-1 signaling is supported, people often notice: feeling fuller for longer[,] fewer constant snack cravings[,] more balanced appetite throughout the day…." (April 21, 2026).

40. Further, that Ledisa recently changed its "GLP-1 Patches" label to "Berberine Patches" does not cure the deceptiveness, because Defendant makes the same material

misrepresentations and claims regarding the patches' purported benefits and efficacy, which as explained below, are false and misleading, and is likely to cause consumers future harm.[24]

41. Defendant's label representations and online advertisements collectively induce consumers like Plaintiff to believe that the GLP-1 Patches contain GLP-1 as the key ingredient and will work as effectively as GLP-1 containing and/or GLP-1 receptor agonist medications to provide the advertised weight management and appetite control benefits.

42. Unfortunately, however, Defendant's representations that its patches contain "GLP-1" and will work as advertised is nothing but a sham because the herbal ingredients in the patches are not as effective as providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

43. Indeed, Defendant's ingredient list reveals that its GLP-1 Patches do not in fact contain any GLP-1. Instead, the patches contain a variety of natural extracts such as berberine, apple cider vinegar, cinnamon, pomegranate, resveratrol, and folic acid, to name a few.

44. Throughout the liability period defined below, Defendant has engaged in an advertising and marketing campaign that falsely represents that its GLP-1 Patches actually contain "GLP-1" and thus, provide the highly desired weight management, blood sugar control, and appetite suppressing benefits widely recognized and associated with the GLP-1 hormone or GLP-1 receptor agonist prescription medications.

45. As a result of this deception, Defendant sold numerous units of the GLP-1 Patches through its website and other online channels.

46. Plaintiffs and Class Members have been, and will continue to be, deceived or misled by Defendant's deceptive advertising claims. Each Class Member purchased and used the GLP-1 Patches during the liability period and in doing so, read and considered the advertising claims on the GLP-1 Patches packaging and marketing materials and based their decision to purchase the GLP-1 Patches on the advertising claims. Defendant's advertising claim that the GLP-1 Patches contained

---

[24] *See* Ledisa Berberine Daily Support Patches, Ledisa, available at www.ledisa.com/products/berberine-patches-sub (last accessed August 4, 2026).

GLP-1 and would promote appetite control, weight management, and reduced cravings was not only a material factor, but the only factor in influencing Plaintiffs' decision to purchase and use the GLP-1 Patches.

47. Plaintiffs and the Class Members would not have purchased the GLP-1 Patches had they known that they did not contain any GLP-1 and would not provide any of the weight management and appetite control benefits associated with GLP-1.

**C. Ledisa's Advertising Claims for the GLP-1 Patches are False and Deceptive**

48. Despite this prominent marketing and advertising, and as many medical experts agree, Ledisa's GLP-1 Patches do not contain any GLP-1 and do not "support" healthy weight management and appetite control as promised because its herbal ingredients are ineffective at providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

49. Nicholas Messinger, M.D., clinical pharmacy manager in the weight and metabolism management program at Mount Sinai Health System in New York City, told HealthCentral that "GLP-1 patches are a scam. Companies are trying to profit off the popularity of these medications. But there are no FDA-approved patches that deliver semaglutide or tirzepatide. The only approved formulations are injections and the Wegovy pill."[25]

50. When asked about the legitimacy of these GLP-1 supplements and their advertised claims, C. Michael White, head of department of pharmacy practice at the University of Connecticut, opined:

> "The marketing seems to suggest that you could get with these natural products, these natural ingredients, the same effect that you can get with GLP-1 agonists, which is simply not the case. And in that way, they are being misleading to people. Some don't even tell you what ingredients are in it at all. And in those products,

---

[25] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

somebody may actually believe that they are going to get semaglutide or they are going to get tirzepatide."[26]

51. Dr. Melanie Jay told TODAY.com that GLP-1 patches, like Ledisa's GLP-1 Patches here, are "not the answer" for weight loss because they don't contain actual GLP-1 medications, but only herbal extracts that ultimately lack standardization or seals of approval, creating unknown risks for consumers.[27]

52. Regarding the efficacy of GLP-1 patches for weight loss, Natasha Bhuyan, M.D., board-certified family physician, stated "[n]one of these supplements have any evidence that they can help with weight loss." She explained:

> A closer look at these products shows they often contain ingredients like B-vitamin complex, berberine, cinnamon extract, and L-glutamine. While these supplements have been studied for various potential health benefits, the evidence connecting them to meaningful weight loss—especially when delivered through a patch—is weak. "None of these supplements have any evidence that they can help with weight loss. There are small benefits to these supplements for different reasons." For example, B vitamins may help with energy if a person is deficient. She adds, "Another important factor to remember is that many benefits of these supplements have been studied in the oral doses, but there are limited studies in patch formulations."[28]

53. Similarly, Dr. Alyssa Dominguez, endocrinologist at the University of Southern California's Keck School of Medicine, told Rolling Stone that the doses of the herbal ingredients used in these GLP-1 patches "are super off compared to anything that was in the research studies, like they were giving people 8,000 times the dose of what is in the patch."[29]

---

[26] Hannah Grabenstein, In the gray world of GLP-1 supplements online, health experts urge caution, PBS News, updated on September 3, 2025, available at https://www.pbs.org/newshour/health/what-to-know-before-you-buy-a-weight-loss-supplement-on-tiktok.

[27] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

[28] Dr. Patricia Varacallo, DO, Do GLP-1 Patches Work? An Expert Doctor Weighs In with the Verdict, The Healthy, A Reader's Digest Brand, August 13, 2025, available at https://www.thehealthy.com/weight-loss/do-glp-1-patches-work-an-expert-doctor-weighs-in-with-the-verdict/.

[29] Fortesa Latifi, Influencers Are Hawking 'GLP-1 Patches.' Do They Work?, Rolling Stone, August 9, 2025, available at https://www.rollingstone.com/culture/culture-features/glp1-patches-influencers-ozempic-1235403902/.

54. Further, even if GLP-1 Patches contained actual GLP-1 medication (they do not), the transdermal patch would be an ineffective delivery system. Sheldon Markowitz, M.D., chief of endocrinology at Episcopal Health Services in New York City, explained to HealthCentral that the effective delivery of GLP-1 via transdermal patch is not just an ineffective system, but it's also "not possible": "Even if a GLP-1 patch had true GLP-1 medications, it's not possible to deliver this medication via that route. These molecules are too large to pass through the skin."[30]

55. C. Michael White echoed these shortcomings: "There are currently no GLP-1 medications that can be absorbed through the skin. The drugs have large molecules that make that very difficult, if not impossible."[31]

56. An article in GlobalNewswire further explained the scientific limitations to the transdermal delivery of herbal ingredients versus pharmaceutical formulations in general:

> Scientific research shows that the skin acts as a strong barrier designed to prevent the entry of most external substances. Effective transdermal delivery of therapeutic compounds typically requires advanced pharmaceutical formulation techniques. These may include penetration enhancers, microneedle systems, or specialized encapsulation technologies developed through extensive research.
>
> Prescription transdermal patches, such as nicotine or hormone replacement patches, undergo years of development to achieve consistent and measurable delivery. **Herbal wellness patches containing botanical ingredients face different scientific challenges, and published research does not currently demonstrate reliable transdermal delivery of many plant compounds at therapeutic levels**.[32]

57. As illustrated above, whether Ledisa's GLP-1 Patches contain "GLP-1" and whether they can provide the advertised appetite control and weight management benefits can be determined with objective factual evidence.

---

[30] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

[31] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

[32] Rejuvacare Ozempatch Ingredients Examined: 2026 Verified Consumer Reports of Herbal Weight Loss Patch Formulation Claims, Global Newswire, January 10, 2026, available at https://finance.yahoo.com/news/rejuvacare-ozempatch-ingredients-examined-2026-122800981.html (emphasis added).

58. The deception is in the name of the product itself. Indeed, the advertising and marketing of Ledisa's GLP-1 Patches as containing "GLP-1" is in a prominent place, front and center on the label of the products, and demonstrates Defendant's awareness that this claim about the product's composition and its intended benefits is material to consumers.

59. Defendant's deceptive representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decision.

60. Plaintiffs and Class Members reasonably relied to their detriment on Defendant's misleading and deceptive representations.

61. In making the false, misleading, and deceptive representations described herein, Defendant knew and intended that consumers would purchase a product advertised as containing "GLP-1" over comparable products that are not advertised as containing "GLP-1."

62. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiffs and the Class Members in that the Classes:

a. Paid a sum of money for a product that was not what Defendant represented;

b. Were deprived of the benefit of the bargain because the GLP-1 Patches they purchased were different from what Defendant warranted; and

c. Were deprived of the benefit of the bargain because the GLP-1 Patches they purchased had less value than what Defendant represented.

63. Had Defendant not made the false, misleading, and deceptive representations, Plaintiffs and the Class Members would not have purchased the GLP-1 Patches at all.

64. Consequently, Plaintiffs and the Class Members have suffered an injury-in-fact and lost money or property as a result of Defendant's wrongful conduct.

**D. Plaintiffs' Experiences**

Plaintiff Alicyn Cathey

65. On approximately March 7, 2026, Plaintiff Alicyn Cathey purchased a pack of Ledisa's labeled "GLP-1 Patches" on Defendant's website.

66. Plaintiff Cathey read Ledisa's website claims, including that the GLP-1 Patches would "support" GLP-1 levels and "trigger GLP-1 release in body"; "sustain[] appetite control"; promote "weight management," "support[] balanced blood sugar levels," and "reduc[e] sugar craving." Plaintiff Cathey also read the front label of the GLP-1 Patches' product packaging, specifically, Defendant's representation that the GLP-1 Patches were named "GLP-1 Patches" leading to the reasonable conclusion that the patches actually contained GLP-1.

67. Plaintiff Cathey purchased the GLP-1 Patches reasonably believing that she was receiving a transdermal patch that actually contained GLP-1 and would provide its associated weight management and appetite control benefits as advertised by Defendant.

68. In making her purchase decision, Plaintiff Cathey reasonably relied on Ledisa's false and misleading misrepresentations that the GLP-1 Patches did in fact contain "GLP-1" and would therefore promote "appetite control," "weight management," "balanced blood sugar levels" and "reduced "cravings" as advertised.

69. However, Ledisa's GLP-1 Patches did not work at all for Plaintiff Cathey. Specifically, Plaintiff Cathey experienced none of the weight loss, appetite control, reduced cravings, or balanced blood sugar benefits as promised by Defendant.

70. Had Plaintiff Cathey known that Ledisa's GLP-1 Patches did not actually contain any GLP-1 or a GLP-1 receptor agonist, were ineffective, and would not work as advertised, she would not have purchased the GLP-1 Patches at all.

<u>Plaintiff Julianne Stueben</u>

71. On approximately November 30, 2025, Plaintiff Julianne Stueben purchased a 3-month supply of Ledisa's labeled "GLP-1 Patches" on Defendant's website.

72. Plaintiff Stueben read Ledisa's website claims, including that the GLP-1 Patches would "support" GLP-1 levels and "trigger GLP-1 release in body"; "sustain[] appetite control"; promote "weight management," "support[] balanced blood sugar levels," and "reduc[e] sugar craving." Plaintiff Stueben also read the front label of the GLP-1 Patches' product packaging,

specifically, Defendant's representation that the GLP-1 Patches were named "GLP-1 Patches" leading to the reasonable conclusion that the patches actually contained GLP-1.

73. Plaintiff Stueben purchased the GLP-1 Patches reasonably believing that she was receiving a transdermal patch that actually contained GLP-1 and would provide its associated weight management and appetite control benefits as advertised by Defendant.

74. In making her purchase decision, Plaintiff Stueben reasonably relied on Ledisa's false and misleading misrepresentations that the GLP-1 Patches did in fact contain "GLP-1" and would therefore promote "appetite control," "weight management," "balanced blood sugar levels" and "reduced "cravings" as advertised.

75. However, Ledisa's GLP-1 Patches did not work at all for Plaintiff Stueben. Specifically, Plaintiff Stueben experienced none of the weight loss, appetite control, reduced cravings, or balanced blood sugar benefits as promised by Defendant.

76. Had Plaintiff Stueben known that Ledisa's GLP-1 Patches did not actually contain any GLP-1 or a GLP-1 receptor agonist, were ineffective, and would not work as advertised, she would not have purchased the GLP-1 Patches at all.

**E. Online Consumer Complaints About Ledisa's GLP-1 Patches**

77. Ledisa is well aware of widespread consumer dissatisfaction arising from Ledisa's false and misleading advertising of the GLP-1 Patches.

78. Plaintiffs' experiences are far from being outliers. Below is a sampling of the online consumer complaints concerning Ledisa's GLP-1 Patches:

a. "FALSE ADVERTISING! No GLP-1 in so-called GLP-1 patches…The product name is completely misleading and should be changed so as not to mislead customers…" (Trustpilot);

b. "Product is a scam…These patches are false advertising, they are not legit GLP-1 and are essentially herbal supplement patches with no scientific research done…" (Trustpilot);

c. "…The GLP1 Patches they sell DO NOT work. I tried them for 1 ½ months and didn't loose [sic] not even 1 lb. Its false advertisement…" (BBB);

d. "Wish to cancel order as I just found out these patches do not have active GLP-1 in them – which is needed to actually loose [sic] weight. I feel cheated." (Trustpilot);

e. "I've been using the patches for 3-months and have not noticed any changes. I bought too soon based on all the ads I kept seeing. After doing research to see when I should notice a change, found there are no GLP-1 patches approved since GLP-1 drugs cannot be received through the skin…." (Trustpilot);

f. "…I've now used the GLP-1 patches for a month and a half and haven't seen any difference (not on the scale or in my appetite)." (Trustpilot);

g. "Total SCAM They're Just Stickers…I did some research and found out GLP-1 can ONLY be taken subcutaneously or orally. These patches do not work…" (Trustpilot);

h. "GLP-1 Patches scam…I tried them for three weeks with NO results at all…DO NOT ORDER FROM THIS COMPANY IT IS A SCAM." (Trustpilot).

## V. PLAINTIFFS' CLAIMS SOUNDING IN FRAUD ARE ALLEGED WITH SPECIFICITY

79. Ledisa is in the best position to know what content it placed on its website, product packaging, and social media pages during the relevant timeframe, and the knowledge it had regarding its GLP-1 Patches and related advertising claims. However, to the extent necessary, Plaintiffs satisfy the pleading requirements for claims sounding in fraud by alleging the following facts with particularity:

80. **WHO**: Ledisa falsely, deceptively, and misleadingly advertised to consumers that its GLP-1 Patches contain GLP-1 and will provide several weight management benefits commonly associated with the actual GLP-1 hormone or a GLP-1 receptor agonist medications, including "appetite control," "weight management," balanced blood sugar levels", "reduc[ed] sugar cravings", and "GLP-1 support."

81. **WHAT**: Ledisa's website is replete with numerous false and misleading advertising claims that Ledisa's GLP-1 Patches will "support" GLP-1 levels and provide several weight management benefits including, for example, that it will promote "appetite control, [and] weight management"; "trigger GLP-1 release in body", "keep[] GLP-1 levels steady all day", and

"optimize metabolic health by supporting balanced blood sugar levels and reducing sugar cravings." Ledisa further claims its GLP-1 Patches allow consumers to "take control of cravings with science-backed GLP-1 support" and that users will experience results such as "no constant hunger anymore—smaller portions finally satisfy you"; "the scale finally moves—no more plateaus, real results"; "snack thoughts disappear—no more constant food thoughts"; and "no more cravings attacks—willpower easy, control at 100%." Ledisa deceptively represents that its GLP-1 Patches are an equally effective alternative to GLP-1 prescription medications, as "the best way" to "sustain[] appetite control with Ledisa's natural approach to weight management…without the need for needles or the digestive upset common with oral tablets." Ledisa misleadingly touts it GLP-1 Patches are "recommended by doctors." But Ledisa's advertising concerning its GLP-1 Patches is false, deceptive, and misleading to reasonable consumers because, as many medical experts agree, Ledisa's GLP-1 Patches do not contain any GLP-1 or GLP-1 receptor agonist and do not "support" healthy weight management and appetite control as promised because (1) its herbal ingredients are ineffective at providing the same weight loss benefits as a GLP-1 receptor agonist medication, and (2) even if they were effective, it would still be impossible to successfully deliver those ingredients through the wearer's skin via a sticker. Indeed, the GLP-1 Patches did not work whatsoever for Plaintiffs or Class Members.

82. **WHERE**: Plaintiffs and Class Members were uniformly exposed to Ledisa's deceptive, false, and misleading advertising claims and omissions concerning its GLP-1 Patches, which were made on Ledisa's website, the GLP-1 Patch product packaging, and Ledisa's social media marketing posts.

83. **WHEN**: Ledisa engaged in these deceptive, misleading, and unfair practices during the putative class period alleged herein, including on November 30, 2025 and March 7, 2026, when Plaintiffs were exposed to Ledisa's misrepresentations and material omissions made on its website concerning the composition, efficacy, and advertised benefits of its GLP-1 Patches.

84. **HOW**: Ledisa capitalizes on the trending buzz word "GLP-1" and the public recognition that GLP-1 medications are associated with weight loss, appetite control, decreased

cravings, and optimized blood sugar levels, and exploits reasonable consumers who are unsavvy as to the nuances of how the GLP-1 natural hormone and its agonists do (and do not) work. The deception is in the name of the product Ledisa intentionally selected. Ledisa induced sales of the GLP-1 Patches by prominently labeling its patches as "GLP-1 Patches" and by promising that they would provide the same weight management benefits provided by GLP-1 medications at a cheaper price and by an easier delivery method.

85. **WHY**: Ledisa engages in its deceptive and misleading advertising of its GLP-1 Patches in order to induce Plaintiffs, Class Members, and all reasonable consumers in the general public who desire achieving weight management and appetite control benefits to purchase its GLP-1 Patches, resulting in substantial profits for Ledisa at the expense of consumers who receive zero benefits from using the GLP-1 Patches.

## VI. CLASS ACTION ALLEGATIONS

86. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves, and Classes of similarly situated persons defined as follows:

> **Nationwide Class**:
> All persons in the United States who, during the applicable statute of limitations, purchased Ledisa GLP-1 Patches.
>
> **California Class**:
> All persons in California who, during the applicable statute of limitations, purchased Ledisa GLP-1 Patches.
>
> **New York Class**:
> All persons in New York who, during the applicable statute of limitations, purchased Ledisa GLP-1 Patches.

87. Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with their motion for class

certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

88. **Numerosity (Rule 23(a)(1)).** The proposed Classes are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the identities of Class Members are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Classes are also sufficiently ascertainable because Defendant has the administrative capability, through its computer systems and other business records, to identify all members of the proposed Classes, and such contact information is otherwise not available to Plaintiffs.

89. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class Members. Such common legal or factual questions include, but are not limited to:

a. Whether Ledisa's misconduct misled or had the tendency to mislead consumers;

b. Whether Ledisa engaged in unfair, fraudulent, and unlawful business practices;

c. Whether Ledisa engaged in deceptive acts or practices and false advertising under the laws asserted;

d. Whether Ledisa's conduct constitutes violations of the laws asserted;

e. Whether Plaintiffs and the Classes were harmed by Ledisa's misrepresentations;

f. Whether Ledisa was unjustly enriched;

g. Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages;

h. Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief; and

i. Whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

90. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other Class Members in that they arise out of the same wrongful business practice by Defendant, as described herein.

91. **Adequacy of Representation (Rule 23(a)(4)).** Plaintiffs are more than adequate representatives of the proposed Classes in that they have suffered damages because of Defendant's improper business practices. Additionally:

a. Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiffs and the unnamed Class Members;

c. Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d. Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

92. **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning Defendant's liability to all Class Members predominate over any questions affecting only individual Class Members. Plaintiffs' proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class Members' individual claims before the Court, especially where, as here, individual Class Members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

93. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

94. **Particular Issues (Rule 23(c)(4)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff Cathey and California Class)**

95. Plaintiff Cathey alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

96. California's UCL prohibits, and provides civil remedies for, "unfair competition," including any "unlawful, unfair, or fraudulent act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

97. The UCL imposes strict liability. Plaintiff Cathey need not prove that Ledisa intentionally or negligently engaged in an unfair business practice—but only that such practices occurred.

98. Plaintiff Cathey has standing to pursues this claim because Plaintiff Cathey has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff Cathey purchased the GLP-1 Patches for her own personal use. In doing so, Plaintiff Cathey relied on the false representation that the patches contained "GLP-1" when in fact, they contained none, and would provide appetite control and weight management benefits, when they did not. Plaintiff Cathey expended money in the

transactions that she otherwise would not have had she known Defendant's advertising claims were false.

***"Unfair" Prong***

99. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives against the gravity of the harm to the alleged victims.

100. Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant engaged in a false advertising campaign that mislead consumers into believing that they were receiving a product that contained GLP-1 and the positive weight management and health benefits that are publicly associated with and widely recognized with GLP-1 medications. But in reality, however, the herbal ingredients in Ledisa's GLP-1 Patches are ineffective at providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

101. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

102. Such practice is devoid of utility and outweighed by the gravity of the harm to Plaintiff Cathey and the California Class who lost money or property by paying for the GLP-1 Patches. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

***"Fraudulent" Prong***

103. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

104. Ledisa engaged in a fraudulent business practice by knowingly representing the patches as containing GLP-1 and would provide the positive health and weight management benefits associated with GLP-1. Defendant's practice deceived Plaintiff Cathey and are highly

likely to deceive members of the consuming public who purchased the GLP-1 Patches in reliance on its advertisements.

105. Plaintiff Cathey and California Class Members acted reasonably when they relied on Ledisa's misrepresentations concerning the GLP-1 Patches.

106. Had Plaintiff Cathey and California Class Members known that Defendant's representations concerning its GLP-1 Patches were false, they would not have purchased the GLP-1 Patches.

***"Unlawful" Prong***

107. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

108. Ledisa's actions, as alleged herein, constitute illegal and unlawful practices committed in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA") and the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL").

109. As a direct and proximate result of Ledisa's unfair, fraudulent, and unlawful practices, Plaintiff Cathey and California Class members have suffered damages.

110. Ledisa has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff Cathey and California Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

111. Additionally, Plaintiff Cathey and California Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SECOND CAUSE OF ACTION
**Violation of California's False and Misleading Advertising Law (the "FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff Cathey and the California Class)**

112. Plaintiff Cathey alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

113. Plaintiff Cathey has standing to pursues this claim because Plaintiff Cathey has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair,

and fraudulent actions. Specifically, Plaintiff Cathey purchased the GLP-1 Patches for her own personal use. In doing so, Plaintiff Cathey relied on the false representation that the patches contained "GLP-1" when in fact, they contained none, and would provide appetite control and weight management benefits, when they did not. Plaintiff Cathey expended money in the transactions that she otherwise would not have had she known Defendant's advertising claims were false.

114. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

115. Defendant violated Business & Professions Code § 17500 by publicly disseminating false and misleading advertisements regarding the GLP-1 Patches.

116. Defendant's false and misleading advertisements were disseminated to increase the sales of the GLP-1 Patches.

117. Defendant knew or should have known its representations and advertisements concerning the GLP-1 Patches were false, deceptive, and misleading to reasonable consumers because the herbal ingredients are ineffective at providing the same appetite control and weight management benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

118. Plaintiff Cathey and the members of the California Class have suffered harm as a result of these violations of the FAL because they have paid money for the GLP-1 Patches that they otherwise would not have paid had they known they did not actually contain GLP-1 and would not work as advertised.

119. Pursuant to Bus. & Prof. Code §§ 17203 and 17500, Plaintiff Cathey and members of the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its deceptive practices.

120. Further, Plaintiff Cathey requests an order awarding Plaintiff Cathey and other California Class Members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

121. Additionally, Plaintiff Cathey and California Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of California's Consumer Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff Cathey and the California Class)**

122. Plaintiff Cathey alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

123. Plaintiff Cathey has standing to pursues this claim because Plaintiff Cathey has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff Cathey purchased the GLP-1 Patches for her own personal use. In doing so, Plaintiff Cathey relied on the false representation that the patches contained "GLP-1" when in fact, they contained none, and would provide appetite control and weight management benefits, when they did not. Plaintiff Cathey expended money in the transactions that she otherwise would not have had she known Defendant's advertising claims were false.

124. The Consumer Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

125. Plaintiff Cathey and each member of the proposed California Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Ledisa's GLP-1 Patches are "goods" within the meaning of

Cal. Civ. Code § 1761(a). Defendant's sale of the GLP-1 Patches were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

126. Ledisa violated the CLRA by engaging in the following proscribed practices by California Civil Code § 1770(a) in transactions with Plaintiff Cathey and California Class Members which were intended to result in, and did result in, the sale of GLP-1 Patches:

a. "Representing that goods…have . . . characteristics, ingredients, uses [or] benefits . . . that they do not have" (a)(5); and

b. "Advertising goods…with intent not to sell them as advertised" (a)(9).

127. Ledisa's misrepresentations alleged herein were material to and relied upon by Plaintiff and reasonable consumers when deciding whether to purchase the GLP-1 Patches.

128. If Plaintiff Cathey and the California Class Members had known that the GLP-1 Patches did not contain "GLP-1" and could not provide the appetite control and weight management benefits as advertised, they would not have purchased the patches at all.

129. As a direct and proximate result of Defendant's conduct, Plaintiff Cathey and the California Class Members suffered injury and damages in an amount to be determined at trial.

130. Pursuant to § 1782(a) of the CLRA, Plaintiff's Counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Defendant did not make any appropriate correction, repair, replacement, or other remedy within the requisite thirty days of Plaintiff's letter. Accordingly, in addition to injunctive relief, Plaintiff Cathey also seeks damages as permitted by Cal. Civ. Code § 1782, as well as punitive damages.

## FOURTH CAUSE OF ACTION
**Deceptive Acts and Practices – N.Y. Gen. Bus. Law § 349, *et seq.***
**(On Behalf of Plaintiff Stueben and the New York Class)**

131. Plaintiff Stueben alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

132. N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

133. Ledisa committed deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 by affirmatively and knowingly misrepresenting on its product packaging, website, and marketing materials that its GLP-1 Patches contain GLP-1 as the key ingredient and will work as effectively as GLP-1 containing and/or GLP-1 receptor agonist medications to provide the advertised weight management and appetite control benefits.

134. Ledisa's actions regarding the advertising and sale of its GLP-1 Patches, as described herein, are deceptive acts or practices in the conduct of business trade or commerce of goods and in the furnishing of consumer products.

135. The deceptive acts or practices and the sale of goods took place in New York because Ledisa sells GLP-1 Patches in New York, disseminated its false and deceptive advertisements in New York, and because Plaintiff Stueben's purchase transaction took place in New York. In short, the underlying nature of the deceptive transactions occurred in New York.

136. N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willingly or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

137. Plaintiff Stueben and the New York Class reasonably relied on Ledisa's materially misleading representations that the GLP-1 Patches contained GLP-1 and would provide the advertised weight management benefits in deciding to purchase the patches.

138. Plaintiff Stueben and the New York Class did not receive the benefit of the bargain because Ledisa's GLP-1 Patches did not actually contain GLP-1 and therefore, did not provide any of the advertised weight management and appetite control benefits as promised.

139. As an actual and proximate result of Ledisa's misconduct, Plaintiff Stueben and the New York Class have been injured by Defendant's deceptive acts and practices and have suffered an ascertainable loss in that they paid more for the GLP-1 Patches than they otherwise would have but for Ledisa's false and misleading advertising.

140. Thus, Defendant is liable to Plaintiff Stueben and the New York Class Members for damages in amounts to be proven at trial.

**FIFTH CAUSE OF ACTION**
**False Advertising – N.Y. Gen. Bus. Law § 350, *et seq.***
**(On Behalf of Plaintiff Stueben and the New York Class)**

141. Plaintiff Stueben alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

142. N.Y. Gen. Bus. Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

143. Ledisa's false advertising of the GLP-1 Patches occurred, and continues to occur, in the course of Ledisa's trade or business.

144. Ledisa's false advertising took place in New York because Ledisa sells GLP-1 Patches in New York and disseminated its false and deceptive advertisements in New York.

145. N.Y. Gen. Bus. Law § 350-e provides that Plaintiff Stueben and the New York Class may seek "actual damages or five hundred dollars, whichever is greater" and the "court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

146. Plaintiff Stueben and the New York Class reasonably relied on Ledisa's materially misleading representations that the GLP-1 Patches contained GLP-1 and would provide the advertised weight management benefits in deciding to purchase the patches.

147. Plaintiff Stueben and the New York Class did not receive the benefit of the bargain because Ledisa's GLP-1 Patches did not actually contain GLP-1 and therefore, did not provide any of the weight management and appetite control benefits as promised.

148. As an actual and proximate result of Ledisa's misconduct, Plaintiff Stueben and the New York Class have been injured by Defendant's deceptive acts and practices and have suffered an ascertainable loss in that they paid more for the GLP-1 Patches than they otherwise would have but for Ledisa's false and misleading advertising.

149. Thus, Defendant is liable to Plaintiff Stueben and the New York Class Members for damages in amounts to be proven at trial.

## SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

150. Plaintiffs allege and incorporate the allegations of the paragraphs above of this Complaint as if fully set forth herein.

151. To the detriment of Plaintiffs and the Nationwide Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

152. Defendant enticed Plaintiffs to purchase its GLP-1 Patches through its false and misleading advertising concerning the composition, efficacy, and weight management benefits of its GLP-1 Patches.

153. Plaintiffs and the Nationwide Class conferred a benefit on Defendant in the form of payment for the GLP-1 Patches.

154. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits through its fraudulent conduct, which under the circumstances, would be unjust to allow Defendant to retain.

155. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the fraudulent conduct alleged herein.

156. Plaintiffs and the Nationwide Class, therefore, seek restitution and disgorgement of all wrongfully obtained money received by Defendant as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, seek judgment in an amount to be determined at trial as follows:

a. Certifying the proposed Class(es), appointing Plaintiffs as representative of the Class(es), and appointing Plaintiffs' counsel as class counsel for the proposed Class(es);

b. Declaring Defendant's misconduct alleged herein to be unlawful;

c. Enjoining Defendant from the wrongful conduct as described herein on behalf of the general public;

d. Awarding actual damages, statutory damages, and/or punitive damages where appropriate, in amounts according to proof;

e. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

f. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g. Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs of suit; and

h. Awarding such other relief as this Court deems just and proper.

///

///

///

///

///

**DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: October 28, 2026

**KALIELGOLD PLLC**

By: */s/ Sophia G. Gold*
Jeffrey D. Kaliel
Sophia G. Gold

*Attorneys for Plaintiffs and the Putative Class*